Filed 9/6/13  In re A.C. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law.<br>_____<br>THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>A.C.,<br><br>        Defendant and Appellant. | B240082<br><br>(Los Angeles County<br>Super. Ct. No. PJ47578) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Benjamin Campos, Juvenile Court Referee.  Modified and, as so modified, affirmed.

        Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

        Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General,  Steven D. Matthews and Analee J. Brodie, Deputy Attorneys General, for Plaintiff and Respondent.

_____

By two petitions filed under Welfare and Institutions Code section 602, it was alleged that appellant A.C. had committed possession of marijuana for sale and vandalism with damage exceeding $400. (Health & Saf. Code, § 11350; Pen. Code, § 594, subd. (a).)[1] Following a contested jurisdictional hearing, the juvenile court found the allegations true, sustained the petitions, declared A.C. a ward of the court, and ordered him home on probation.

The judgment is affirmed as modified.

## BACKGROUND

Viewed in accordance with the usual rule of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

## STATEMENT OF FACTS[2]

On June 10, 2011, John White was working as a security officer at the Castle Park Amusement Center in Sherman Oaks. About 8:20 p.m., he was monitoring the video game area when he saw appellant A.C. and a female companion sitting "inside one of the video game consoles."[3] From 10 to 15 feet away, White "saw what appeared to be a motion of [A.C.] vandalizing one of our video games." White testified A.C. "had his right hand next to part of the video game console in a downward motion as in to [*sic*] carving the video game (indicating)." The juvenile court described White's gesture: "He appears to be holding a small object and making downward strokes." White testified he did not see anything in A.C.'s hand.

---

[1]      All further statutory references are to the Penal Code unless otherwise specified.

[2]      Because the issues on appeal pertain to the vandalism petition, this statement of facts is limited to the evidence presented regarding that offense.

[3]      White testified this was the type of video game that is covered in the front and back, but has open sides which enables the player to sit "inside" the game.

When A.C. saw White watching him, he appeared "shocked," his hand stopped moving and then he lowered his hand. When White took a closer look at the video game console, he "noticed what appeared to be a fresh mark with shavings. After you carve into wood or some kind of plastic, the shavings that come[] off." The mark was approximately a "five-inch line going straight down" and it appeared to be in the same location where White had seen A.C.'s hand making the downward motion. White did not hear anything drop or see any hand gesture indicating A.C. was discarding something.

White acknowledged that, when he started his work shift three hours earlier, he had not inspected the video games to see if there were any fresh markings. He did not know how many other people had used the same video game console that day. The arcade usually repaired such markings by "resurfacing" the game consoles. This had been done a week prior to the incident and the console A.C. was using had been resurfaced at that time. White testified new marks appeared on the video games at varying frequencies, "from maybe once a week to maybe once every other month."

## CONTENTIONS

1. There was insufficient evidence to support the juvenile court's determination A.C. had committed vandalism.

2. The record must be amended to reflect the juvenile court's finding A.C. committed misdemeanor vandalism rather than felony vandalism.

3. The maximum term of confinement set forth by the juvenile court must be stricken.

## DISCUSSION

1. *Sufficient evidence supported the vandalism finding*.

A.C. contends there was insufficient evidence to support the juvenile court's true finding on the vandalism charge. This claim is meritless.

3

a. *Legal principles.*

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence – that is, evidence that is reasonable, credible, and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The federal standard of review is to the same effect: Under principles of federal due process, review for sufficiency of evidence entails not the determination whether the reviewing court itself believes the evidence at trial establishes guilt beyond a reasonable doubt, but, instead, whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.] The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. [Citation.] ' "Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment." ' [Citations.]" ' [Citation.]" (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.)

" 'An appellate court must accept logical inferences that the [finder of fact] might have drawn from the circumstantial evidence.' [Citation.] 'Before the judgment of the trial court can be set aside for the insufficiency of the evidence, it must clearly appear that on no hypothesis whatever is there sufficient substantial evidence to support the verdict of the [finder of fact].' [Citation.]" (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) As our Supreme Court said in *People v. Rodriguez, supra,* 20 Cal.4th 1, while reversing an insufficient evidence finding because the reviewing court had rejected contrary, but equally logical, inferences the jury might have drawn: "The [Court of Appeal] majority's reasoning . . . amounted to nothing more than a different weighing of

4

the evidence, one the jury might well have considered and rejected. The Attorney General's inferences from the evidence were *no more inherently speculative* than the majority's; consequently, the majority erred in substituting its own assessment of the evidence for that of the jury." (*Id.* at p. 12, italics added.)

b. *Discussion.*

At the adjudication hearing, the juvenile court denied A.C.'s motion to dismiss for insufficient evidence, ruling: "[T]he witness testified clearly and credibly as to his observations. He didn't stretch what he saw. He didn't invent anything. He saw two young people sitting in a video game. One of them was scratching the surfaces of the console with something that left a mark."

The juvenile court then heard argument as to whether the People had proved beyond a reasonable doubt A.C. committed vandalism. A.C.'s attorney argued: "We don't know if the minor was just . . . looking at the etchings that were there putting his finger on there. We have no idea. We have no idea what he was doing. He could have been tracing with his fingers on the etchings. [¶] The fact there was nothing found that could have made such an etching I think is incredibly significant. [¶] In order to find the People have met their burden of proving the case beyond a reasonable doubt, I think you need some type of item, whether it's a marker or a razor blade or something, something that could create an etch. And there is no evidence of such an object." The juvenile court rejected this argument: "The court's . . . required to use its reasoning power. And the information provided by the witness indicates he made the observation and immediately after contact of the minor observed the markings on the console."

On appeal, A.C. argues the evidence raised no more than a mere suspicion he had vandalized the video game console. He notes White did not see an object in his hand, no object was recovered from the area around the console, and White did not see or hear anything drop. A.C. argues: "Finally, no object was recovered from appellant while he was at the arcade, even after the police came to the scene. Thus, no evidence supports the court's determination that appellant used an object to make the mark." A.C. asserts "it is inherently improbable, if not physically impossible, based upon [White's] testimony" that

5

he "was the person who damaged the video game console if he had no tool with which to scratch it." A.C. suggests it is more likely he was merely using his finger to feel a mark some other person had already carved into the console, and that "[t]o the extent appellant looked 'shocked' when he saw White watching him, it stands to reason that he assumed the guard would blame him for creating the mark."

We are not persuaded. A.C.'s argument ignores the legitimate inferences that flowed from White's testimony. White saw him make scratching motions in the very area where the fresh mark and shavings appeared. When he noticed White watching him, A.C. looked shocked and immediately stopped what he was doing. This constituted consciousness of guilt evidence which, when combined with the other circumstantial evidence tending to show A.C. had defaced the console, was sufficient to prove the offense. (See, e.g., *People v. Redrick* (1961) 55 Cal.2d 282, 287-288 [where sufficiency of evidence to prove illegal drug possession (i.e., dominion and control with knowledge of its presence and narcotic character) "might otherwise have been doubtful, it was strengthened by a showing of consciousness of guilt"].) Although White never saw the object A.C. presumably used to deface the console, A.C. could have successfully concealed it. That no object was found even after the police arrived is not very probative because there was no evidence the police searched A.C.

A.C.'s proposed exculpatory scenario, i.e., that he had merely been using his finger to trace a mark made by someone else, does not help him because it is no less speculative than the inculpatory inferences flowing from the undisputed evidence. (See *People v. Rodriguez, supra,* 20 Cal.4th at p. 12, italics added [where "Attorney General's inferences from the evidence were *no more inherently speculative* than [Court of Appeal] majority's; . . . the majority erred in substituting its own assessment of the evidence for that of the jury."].)

We conclude there was sufficient evidence to sustain the true finding that A.C. committed vandalism.

2. *Minute order designating the vandalism as a felony should be corrected.*

A.C. contends a nunc pro tunc minute order in the clerk's transcript should be corrected to show the vandalism offense was a misdemeanor, not a felony. The Attorney General concedes the minute order is mistaken.

Section 594 proscribes vandalism: "(a) Every person who maliciously commits any of the following acts with respect to any real or personal property not his or her own, in cases other than those specified by state law, is guilty of vandalism: [¶] (1) Defaces with graffiti or other inscribed material. [¶] (2) Damages. [¶] (3) Destroys." Under subdivision (b)(1) of section 594, if "the amount of defacement, damage, or destruction is four hundred dollars ($400) or more" the vandalism is a wobbler; i.e., it may be either a misdemeanor or a felony. (§ 17, subd. (a).) However, if "the amount of defacement, damage, or destruction is less than four hundred dollars ($400)" vandalism is a misdemeanor. (§ 594, subd. (b)(2)(A).)

As the Attorney General acknowledges, the People did not present any evidence as to the amount of damage caused by A.C., and after hearing all the evidence the juvenile court designated the vandalism offense a misdemeanor. Thereafter, a minute order entered the same day as the adjudication hearing declared one count to be a felony (i.e., the drug charge) and the other count to be a misdemeanor (i.e., the vandalism charge). However, a subsequent nunc pro tunc minute order purported to "correct" the first order by designating both offenses as felonies. This nunc pro tunc order was erroneous because the record demonstrates the juvenile court acknowledged the People had failed to prove any damage amount.

The "record of the oral pronouncement of the court controls over the clerk's minute order" (*People v. Farell* (2002) 28 Cal.4th 381, 384, fn. 2), and "a discrepancy between the judgment as orally pronounced and as entered in the minutes is presumably the result of clerical error." (*People v. Mesa* (1975) 14 Cal.3d 466, 471.) It is appropriate for us to now correct this error. (See *In re Candelario* (1970) 3 Cal.3d 702, 705 ["It is not open to question that a court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts. . . . The court may correct such errors on its own motion or upon the application of the parties."].)

We will order the judgment modified accordingly.

3. *Designated maximum term of confinement should be stricken.*

A.C. contends the juvenile court erroneously specified a maximum term of physical confinement of three years and four months because A.C. was not ordered into confinement at all; rather, he was placed home on probation. We agree.

As noted by *In re Matthew A.* (2008) 165 Cal.App.4th 537, 541: "When a minor is removed from the physical custody of his parent or custodian as a result of criminal violations sustained under Welfare and Institutions Code section 602, the court must specify the maximum term of imprisonment that could be imposed upon an adult convicted of the same offense or offenses. (Welf. & Inst. Code, § 726, subd. (c).) [¶] Appellant was not removed from his mother's physical custody. This means that the necessary predicate for specifying a term of imprisonment does not exist. The sentencing authority of a court in almost all instances is prescribed by statutory law, as it is in this case. The statute did not empower the court to specify a term of imprisonment and that should have been the end of the matter."

We will modify the judgment by striking the juvenile court's specification of a maximum term of physical confinement.

8

## DISPOSITION

The judgment is modified by striking the juvenile court's specification of a maximum term of physical confinement, and by correcting the vandalism designation to reflect that it was a misdemeanor. As so modified, the judgment is affirmed. The trial court is directed to correct its judgment consistent with this opinion.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KLEIN, P. J.


We concur:


CROSKEY, J.


KITCHING, J.

9